

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| | § | |
| | § | No. 08-23-00225-CV |
| IN RE: CLAUDIA PATRICIA ZARAGOZA DELGADO | § | AN ORIGINAL PROCEEDING |
| | § | IN MANDAMUS |
| | § | |

## MEMORANDUM OPINION

This original proceeding arises from the trial court's partial grant of Juan Carlos Bermudez Espinosa's (Husband) motion for summary judgment in the underlying divorce suit, which has previously come before this Court. Claudia Patricia Zaragoza Delgado (Wife) seeks mandamus relief before the parties proceed to a second jury trial. For the reasons explained below, we conditionally grant the writ of mandamus and order the trial court to vacate its partial summary judgment order to the extent that it grants Husband's motion "in conformity with" this Court's prior opinion in this case.

### *Background[1]*

---

[1] Some of the following facts come from our earlier opinion in this case. *See Fraccionadora y Urbanizadora de Juarez, S.A. de C.V. v. Delgado*, 632 S.W.3d 80 (Tex. App.—El Paso 2020, no pet.).

Husband and Wife married in February 1996 in Juarez. They later moved to El Paso, and Wife filed for divorce in El Paso County in April 2013. Husband counter-petitioned, asserting the couple had a premarital agreement under Mexican law, and asked the trial court to take judicial notice of foreign law. Husband specifically pointed to the couple's marriage certificate (also called an acta de matrimonio), which states their marriage was subject to a separate property marital regime.

Wife moved for summary judgment, arguing that it did not matter what Mexican law provided because once the couple moved to El Paso, only Texas—not Mexican—law applied. She attached to her motion the full contents of Husband's motion to take judicial notice of Mexican law, including the provisions of the applicable Chihuahuan law related to the selection of a separate or community property marital regime. The trial court granted partial summary judgment for Wife, concluding Texas law applied and thus any Mexican premarital agreement was invalid because Texas is a community property state. The parties then tried the case to a jury, which divided the marital estate.

### A. This Court reverses the trial court's summary-judgment order on the premarital agreement issue and remands for a new trial.

Both Husband and Wife appealed.[2] As relevant to this proceeding, Husband brought six issues on appeal, including that the trial court: (1) erred in finding Wife established there was no premarital agreement, and (2) abused its discretion in refusing to admit the parties' signed marriage certificate at trial. *Fraccionadora y Urbanizadora de Juarez, S.A. de C.V. v. Delgado*, 632 S.W.3d 80, 82 (Tex. App.—El Paso 2020, no pet.).

---

[2] Wife appealed the trial court's decision granting in part Husband's objections to her affidavit attached to her motion for summary judgment. Husband's companies also appealed as intervenors. Those issues are irrelevant to this proceeding.

Reviewing Wife's summary judgment motion and indulging every reasonable inference in Husband's favor, this Court assumed Husband's motion to take judicial notice of foreign law accurately stated the Chihuahuan law requiring marrying couples to elect a community or separate property regime to govern the characterization of their property acquired during their marriage. *Id.* at 88–89. In outlining those laws, the opinion described the "marriage capitulations or admissions" that formalize the couple's choice of regime and may deal with either party's current assets as well as later acquired assets.[3] *Id.* at 89. It also noted that under this statutory scheme, a marrying couple may choose a total or partial separation of assets. *Id.*

The Court next compared the laws of Texas and Chihuahua as they relate to premarital agreements, noting that they are "quite similar" and "allow persons about to marry a great deal of flexibility in determining the character of the various types of property they will acquire during their marriage." *Id.* at 90. Thus, the Court concluded "it would not be against the public policy of Texas to enforce a premarital agreement properly executed in Chihuahua, Mexico," and therefore found "Wife did not establish as a matter of law that no premarital agreement exists." *Id.*

The Court further reasoned Wife's reliance on Texas Family Code section 7.002(a) was "misplaced" because that section "allows courts to divide property acquired by either spouse while domiciled elsewhere if the property would have been community property had the spouse been domiciled in Texas at the time of acquisition." *Id.* Instead, the opinion continued, "***assuming the validity of a Mexican premarital agreement***, all of the acquired property is either the separate property of Husband or Wife as the result of their premarital agreement and would fall outside the application of § 7.002(a)." *Id.* (emphasis added). Thus, Section 7.002(b) "***would*** control," which

---

[3] No marriage capitulations or admissions appeared in the record.

provides in part that "[i]n a decree of divorce or annulment, the court shall award to a spouse the following real and personal property, wherever situated, as the separate property of that spouse . . . property that was acquired by the spouse while domiciled in another state and that would have been the spouse's separate property if the spouse had been domiciled in this state at the time of acquisition[.]" *Id.* (emphasis added). The Court added:

> ***Assuming arguendo that a valid and enforceable Mexican premarital agreement existed***, all of the spouses' personal earnings, as well as the earnings from their respective separate properties, would be the separate property of each as a result of their premarital agreement. Stated differently, the property in this case is not simply property which was acquired while the parties were domiciled elsewhere. It is property characterized under the terms of a premarital agreement as separate property acquired while the parties were domiciled elsewhere. (emphasis added).

*Id.* at 90–91.

The opinion then described another case involving a Mexican marriage and characterization-of-property dispute, agreeing that "[i]t is inconceivable to think that a Texas court would invalidate a premarital agreement that was valid in Mexico when it was executed and now would be valid in Texas." *Id.* at 91 (quoting *Carrillo v. Garzon*, No. 14-94-00630-CV, 1995 WL 628156, at *4 (Tex. App.—Houston [14th Dist.] Oct. 26, 1995, no writ) (not designated for publication)). The Court thus concluded the trial court erroneously granted partial summary judgment in Wife's favor. *Id.* In other words, it was error for the trial court to conclude: (1) Texas law applied, and (2) because Texas is a community property state, any foreign agreement addressing characterization of property must comport with Texas community property laws. *Id.* at 90.

As to Husband's second issue on appeal (*i.e.*, that the trial court abused its discretion in refusing to admit a signed copy of the parties' marriage certificate), the Court noted Husband attempted to introduce an executed copy of the couple's executed marriage certificate to impeach

Wife's testimony that she did not recall signing the document at their civil marriage ceremony. *Id.* at 91–92. Wife's counsel objected in part because she alleged Husband was attempting to produce a version of the marriage certificate that differed from the one attached to Wife's motion for summary judgment, which featured the typed names of the parties but not their signatures. *Id.* She contested whether Husband had timely disclosed the signed marriage certificate during discovery. *Id.* at 92. Because this Court could not determine from the "voluminous record" whether Husband timely disclosed the signed marriage certificate, it overruled Husband's complaint that the trial court erred in excluding that exhibit at trial. *Id.* The Court denied Husband's remaining issues on appeal as moot. *Id.*

**B. On remand, Husband and Wife file competing motions for summary judgment.**

After this Court remanded the case, Husband and Wife both filed amended petitions and competing motions for summary judgment. As relevant to this proceeding, Husband states the following in his traditional motion for summary judgment:

> [Husband] and [Wife] were married in Juarez, Chihuahua, Mexico, and as per the original certificate of marriage or Acta de Matrimonio, which specifically states 'this marriage contract is subject to the regime of separation of property', they voluntarily and expressly submitted themselves to such regime requiring all property owned at the time of marriage, accumulated thereafter, and earnings therefrom, to be characterized as separate property. There was no provision for the accumulation of community property. Nevertheless, [Wife] denied that there was a separate property agreement and the jury found that there was community property. ***Based upon the remand from the Eighth Court of Appeals*** and the present admission by [Wife] that the parties entered into a separate property agreement, ***the Court must enter its order complying with the instruction of the Court of Appeals to enforce the premarital agreement*** and order the return of [Husband's] monies and property. (emphasis added).

Further, in describing the case's procedural history in his motion, Husband characterized the appeal as follows:

> On October 22, 2020, the Eighth Court of Appeals reversed and remanded. Justice Ann McClure writing found that the trial court erred in applying Texas law and

5

erred in granting the motion for partial summary judgment that no premarital agreement existed; and *that the Acta de Matrimonio constituted an agreement that all property acquired by each party was that party's separate property*. The Court of Appeals remanded the case to the trial court for proceedings consistent with its opinion. (emphasis added).

Husband then argued that the law of the case doctrine "requires the enforcement of the parties' selection of the separate property regime" as set forth by this Court's opinion and quoted from the section regarding Texas and Chihuahua's premarital agreement laws. However, in quoting the Court's discussion of the Texas Family Code provisions, Husband's motion made the following alterations:

Tex. Fam. Code § 7.002(b) [*controls*]:

(b) In a decree of divorce or annulment, the court shall award to a spouse the following real and personal property, wherever situated, as the separate property of that spouse:

(1) property that was acquired by the spouse while domiciled in another state and that would have been the spouse's separate property if the spouse had been domiciled in this state at the time of acquisition[.]

[*Pursuant to the premarital agreement*,] all of the spouses' personal earnings, as well as the earnings from their respective separate properties, would be the separate property of each as a result of their premarital agreement. (emphasis added).

Husband then stated that "[a]pplying the law of the case to the incontrovertible evidence of the parties' selection of the separate property regime such that all property acquired by Juan Carlos and his earnings were his separate property and all property acquired by Patricia and her earnings were her separate property and considering Patricia's unequivocal testimony that she did not contribute any separate property to Juan Carlos' separate estate and her abandonment of any reimbursement claim at trial, the Court must confirm the property acquired by each as each party's separate property." Though Husband's motion raised other issues in his favor, his argument on

6

this issue was limited to the above characterization of our prior opinion in this case. In other words, he made no other legal argument based on this Court's opinion or the scope of remand.

In response, Wife protested that Husband asked the trial court "to hold that the couple's marriage certificate (Acta de Matrimonio), alone, constitutes a prenuptial agreement," which she maintains "is not consistent with Mexican Law." Specifically, she contended that "[i]n order to form a valid and enforceable prenuptial agreement in Mexico, the couple was required to provide a full and accurate disclosure of their assets and liabilities (Matrimonial Capitulations) which are required to be filed with the office of Civil Registry," of which Husband provided no evidence.

Wife's response also alleged Husband "misrepresents the scope and holding of the Opinion issued by the Eighth Court of Appeals." She further stated Husband's "motion conveniently left out the 'assuming arguendo' portion of the opinion," and "[i]n doing so, he attempt[ed] to mislead" the trial court regarding this Court's opinion. She clarified that "the judgment by the trial court was reversed because the 8th COA found that 'Wife did not establish as a matter of law that no premarital agreement exists,'" and Husband's "arguments regarding the couple's Acto de Matrimonio precluded [Wife's] summary judgment." Wife also argued that "[h]ad the Court intended to find that there was a valid and enforceable premarital agreement, the Court of Appeals would have reversed and rendered," rather than remanded. She concluded that "[s]ince that is not the holding, once [the trial court] determines whether the parties entered into a prenuptial agreement, the case will proceed to trial where the parties will address all pending issues in the distribution of their marital estate."[4]

---

[4] In short, the parties disagree whether the acta de matrimonio is in itself a prenuptial agreement under Mexican law (as Husband argues) or simply the equivalent of a marriage certificate, which, without more, does not constitute a premarital agreement under Mexican law (as Wife argues). Given the limited nature of this proceeding, that issue is not before us.

**C. The trial court denies Wife's motion and grants Husband's in part.**

The trial court scheduled a hearing on Husband and Wife's competing motions for summary judgment on July 11, 2023. However, the trial court ultimately heard only arguments related to the parties' various objections, which it took under advisement. A written ruling on the parties' various objections does not appear in the mandamus record.

On July 26, 2023, the trial court issued its order denying Wife's motion for summary judgment and partially granting Husband's. The order reads in part:

> The Court considered all filed Motions, pleadings, responses, transcripts, Court of Appeals opinions, exhibits and arguments of counsel.
>
> [Wife's] Motion for Summary Judgment is denied.
>
> [Husband's] Motion for Summary Judgment is partially granted in conformity with the Court of Appeals Opinion 08-16-00046-CV and finds that as a matter of law, the parties entered into an enforceable premarital agreement assuming the introduction of the Acto De Matrimonio was validly executed and includes the signatures of both parties. It appears that the COA was silent on that issue as the records were too voluminous to determine. The remaining Motions are denied.

Wife filed a writ of mandamus, contending the trial court abused its discretion by concluding this Court's opinion in the first appeal determined the parties' marriage certificate constituted a premarital agreement under Mexican law and she is entitled to mandamus relief to "prevent a pointless second jury trial before the inevitable appellate reversal and third jury trial[.]" She also sought emergency relief, which we granted on September 6, 2023, to stay the impending trial while we considered her mandamus petition. TEX. R. APP. P. 52.10.

### *Analysis*

Wife must meet two requirements to demonstrate she is entitled to relief by mandamus. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004) (orig. proceeding). She must show

8

that first, the trial court clearly abused its discretion, and second, she has no adequate remedy by appeal. *Id.* at 135–36.

### A. Has Wife shown that the trial court abused its discretion?

Wife contends the trial court abused its discretion by erroneously concluding that this Court resolved the enforceability of the couple's marriage certificate as a premarital agreement under Mexican law. She argues this Court did not address the ultimate enforceability of the marriage certificate as a premarital agreement under Mexican law but instead simply stated whether an enforceable premarital agreement exists must be determined under Mexican law. Thus, she maintains the issue before this Court on the prior appeal was not substantially the same as the issue presented by the competing summary judgment motions before the trial court on remand, and the law of the case doctrine does not apply.[5]

Husband contends the trial court did not abuse its discretion, arguing that Wife's motion for summary judgment is not supported by her pleadings, her Mexican law expert submitted substantively conflicting reports, and the trial court's order granted his motion "in conformity with" (and not "based upon") this Court's prior opinion.[6]

"A trial court clearly abuses its discretion if 'it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law.'" *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (quoting *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985)). Because "[a] trial court has no 'discretion' in determining what the law is or applying the law to the facts[,] . . . a clear failure by the trial court to analyze or apply the law correctly will

---

[5] Wife makes two additional arguments in the alternative, but because we agree with her first contention, we do not address them further.

[6] Husband does not explain the difference between "based upon" and "in conformity with," and given the record presented, we cannot discern a meaningful distinction between the two.

constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ." *Id.* at 840 (collecting cases).

Our holding made clear the trial court incorrectly applied Texas law: "We repeat again that the trial court granted summary judgment because she believed Texas law applied and, because Texas is a community property state, any foreign agreement addressing characterization of property must comport with Texas community property laws. To the contrary, Texas courts have held that premarital agreements entered into in another state must be evaluated under the law of the sister state." *Delgado*, 632 S.W.3d at 90. By saying "[*a*]*ssuming arguendo* that a valid and enforceable Mexican premarital agreement existed," the opinion underscores that we made no decision as to whether a Mexican premarital agreement existed. *Id.* at 90–91 (emphasis added). Indeed, as Wife points out, she did not brief the enforceability of the marriage certificate as a premarital agreement under Mexican law in the first appeal because her position—with which the trial court agreed—hinged on the argument that Texas law applied. And what we could not determine on appeal due to the "voluminous record" was whether the signed marriage certificate had been timely disclosed and thus whether the trial court's refusal to admit it constituted an abuse of discretion. *Id.* at 91–92. That holding did not assume the conclusion that the signed marriage certificate, had it been admitted, would have constituted an enforceable premarital agreement under Mexican law.

The scope of our remand therefore included a proper determination of whether a valid and enforceable Mexican premarital agreement exists under Mexican—not Texas—law.[7] Our opinion did not hold that the marriage certificate, if an executed copy had been in evidence, necessarily

---

[7] This includes a determination of the applicable Mexican law by the trial court and how that law applies to the facts of this case. *See Long Distance Intern., Inc. v. Telefonos de Mexico, S.A. de C.V.*, 49 S.W.3d 347, 351 (Tex. 2001).

10

constituted a premarital agreement under Mexican law. Because that is what the trial court's order partially granting Husband's motion for summary judgment appears to conclude, that represents "a clear failure by the trial court to analyze or apply the law correctly . . . ." *Walker*, 827 S.W.2d at 840; *see also In re Castle Tex. Prod. Ltd. P'ship*, 563 S.W.3d 216, 218–19 (Tex. 2018) (per curiam) (clarifying scope of remand in prior opinion and finding trial court's noncompliance with prior judgment warranted mandamus relief).

Thus, the trial court's order partially granting Husband's motion for summary judgment purportedly "in conformity" with this Court's opinion was a clear abuse of discretion.[8] Wife has met the first requirement.

### B. Has Wife shown that she has no adequate remedy by appeal?

Second, Wife must show she does not have an adequate appellate remedy to be entitled to mandamus relief. To be sure, "[g]enerally, a writ of mandamus is unavailable as a means to review a partial summary judgment." *In re McIntire*, No. 07-22-00249-CV, 2023 WL 113059, at *1 (Tex. App.—Amarillo Jan. 5, 2023, orig. proceeding) (mem. op.) (collecting cases). "Yet, generally does not mean always." *Id.*; *see also In re Caballero*, 441 S.W.3d 562, 570–71 (Tex. App.—El Paso 2014, orig. proceeding) (granting mandamus relief to vacate partial summary judgment). Simply because Wife could appeal the trial court's final judgment after a second jury trial does not mean she has an "adequate" remedy. *In re Caballero*, 441 S.W.3d at 571.

"The operative word, 'adequate', has no comprehensive definition; it is simply a proxy for the careful balance of jurisprudential considerations that determine when appellate courts will use original mandamus proceedings to review the actions of lower courts." *In re Prudential*, 148

---

[8] Husband's merits-based arguments are inapposite for our mandamus review because Wife's petition does not ask us to reverse the trial court's order denying her competing motion for summary judgment.

S.W.3d at 136. While "[m]andamus review of incidental, interlocutory rulings by the trial courts unduly interferes with trial court proceedings, distracts appellate court attention to issues that are unimportant both to the ultimate disposition of the case at hand and to the uniform development of the law, and adds unproductively to the expense and delay of civil litigation[, m]andamus review of significant rulings in exceptional cases may be essential to . . . spare private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings." *Id.* Ultimately, the Texas Supreme Court counsels that "[a]n appellate remedy is 'adequate' when any benefits to mandamus review are outweighed by the detriments." *Id.* This test is "practical and prudential," and it "resists categorization." *Id.* Because this determination "depends heavily on the circumstances presented," we are "guided by general principles" rather than "simple rules." *Id.* at 137 (citing 16 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3934.1, at 572, 574 (1996)).

Granting mandamus to correct an inaccurate reading of our opinion and the scope of remand outweighs the detriments. It will spare the parties a second jury trial (which had been set for three weeks) and, because proper division of the marital estate hinges on the premarital-agreement determination, the related time and money that would have been "wasted" in this ten-year-old divorce case. Though Husband argues Wife cannot show she will lose important substantive or procedural rights absent mandamus relief, he fails to respond to substantive issue Wife presents for our review (*i.e.*, whether the trial court granted partial summary judgment in his favor based on a decision this Court did not make) or address the other pragmatic reasons for granting mandamus.

Because the issue before us fits well within the principles in favor of mandamus review and the benefits to mandamus review in the circumstances presented outweigh the detriments, we

12

conclude Wife has shown she has no adequate appellate remedy. Wife has met the second requirement.

## **<u>CONCLUSION</u>**

For the above reasons, we conditionally grant Wife's writ of mandamus and direct the trial court to vacate its order partially granting Husband's motion for summary judgment "in conformity with" our earlier opinion. We are confident the trial court will do so, and our writ will issue only if it does not.

YVONNE T. RODRIGUEZ, Chief Justice

October 9, 2024

Before Rodriguez, C.J., Soto, J., and Ferguson, Judge
Ferguson, Judge (Sitting by Assignment)